# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

United States of America,

    Plaintiff

v.

Eric Yokani Moreno-Ochoa,

    Defendant

Case No.: 2:18-cr-00116-JAD-DJA

**Order Denying Motion for Compassionate Release**

[ECF No. 73]

Defendant Eric Yokani Moreno-Ochoa moves for an early release because he wants to be back with his family and he is afraid that the COVID-19 virus may reach his prison.[1] I deny Moreno-Ochoa's motion because he has not demonstrated that compassionate release is available or warranted.

## Background

Moreno-Ochoa pled guilty without a written plea agreement to being a deported alien found unlawfully in the United States in violation of 8 U.S.C. § 1326 and was sentenced to 50 months in custody followed by three years of supervised release.[2] His robust criminal history since the age of 14 included three prior felony convictions—including one for drug trafficking—and thirteen misdemeanors. This was his second § 1326 felony conviction.[3] His judgment of conviction was entered four months ago;[4] he did not appeal.

---

[1] ECF No. 73.

[2] ECF No. 72 (judgment).

[3] PSR at 22, ¶ 112.

[4] ECF No. 72.

Moreno-Ochoa is housed at Reeves I & II correctional institution, which is operated by the GEO Group, Inc, under contract with the Bureau of Prisons (BOP).[5] His projected release date is October 25, 2021.[6] In a five-sentence motion, he asks for release "under COVID19."[7] He offers three points and no authorities for his request:

- He wants "to be deported back to [his] Country of Mexico, to be reunited with [his] two children and [his] fiancée";
- He has never committed a violent crime and has been on good behavior while incarcerated; and
- "This disease COVID 19 is spreading really fast and [he] fear[s] that while [he] is in custody [he] will be infected as [he] share[s] common areas with hundreds of other inmates and social distancing could not be practiced in prison."[8]

The Federal Public Defender declined the opportunity to file a supplement on his behalf though this Court's General Order 2020-06 permits it.[9]

**Discussion**

A sentencing court's ability to modify or reduce a sentence once imposed is seriously limited.[10] The compassionate-release provision of 18 U.S.C. § 3582(c)(1)(A)(i), as amended by

---

[5] https://www.bop.gov/inmateloc/ (last visited 5/15/2020).
[6] *Id*.
[7] ECF No. 73.
[8] *Id*. at 2–3.
[9] ECF No. 75.  I find that this motion is suitable for disposition without a hearing or waiting for the government's response.
[10] *See United States v. Penna*, 319 F.3d 509, 511 (9th Cir. 2003) (exploring Federal Rules of Criminal Procedure 35 and 36); 18 U.S.C. § 3582(c).

the First Step Act of 2018,[11] is an exception to this limitation.  It allows the sentencing judge to reduce a sentence based on "extraordinary and compelling reasons" after the defendant has failed to get the BOP to bring such a motion on his behalf.[12]  The court must consider the factors in 18 U.S.C. § 3553(a) "to the extent that they are applicable," and any sentence reduction must be "consistent with applicable policy statements issued by the Sentencing Commission."[13]

The court may entertain an inmate's request for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i) only (1) "after [he] has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion" on his behalf or (2) after "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."[14]  This exhaustion requirement is mandatory, and an inmate's failure to satisfy it is "a glaring roadblock foreclosing compassionate release . . . ."[15]  Because Moreno-Ochoa has not demonstrated that he exhausted his administrative rights before filing this motion, it must be denied for failure to exhaust.

Even if Moreno-Ochoa had properly exhausted the administrative process before filing this motion, however, I would deny it for the separate and independent reason that the record does not demonstrate that his compassionate release is warranted.  Moreno-Ochoa's reasons for wanting release are neither extraordinary nor compelling.  Most inmates want to be returned to

---

[11] The First Step Act of 2018, § 603(b), Pub. L. 115-391, 132 Stat. 5194, 5239 (Dec. 21, 2018).
[12] 18 U.S.C. § 3582(c)(1)(A)(i).
[13] *Id.*
[14] *Id.*
[15] *U.S. v. Raia*, 954 F.3d 594 (3d Cir., Apr. 2, 2020) (holding that failure to comply with § 3582(c)(1)(A)'s exhaustion requirement bars relief).  *See also* my extensive analysis of the exhaustion issue in *United States v. Johnson*, No. 2:12-cr-00336-JAD-CWH, 2020 WL 2430936, at *2 (D. Nev. May 12, 2020), incorporated herein as set forth in full.

3

their families and have maintained good behavior throughout their detention, so Moreno-Ochoa's situation is entirely typical. Although the COVID-19 pandemic is undeniably grave and its impacts on every aspect of American life are unprecedented, Moreno-Ochoa does not claim that he is particularly vulnerable to it or that there are any confirmed cases of the virus among the inmate population at his facility,[16] and the BOP has implemented a detailed COVID-19 response plan for federal inmates.[17] Thus, I find no extraordinary and compelling reasons for Moreno-Ochoa's early release.

A sentence reduction for Moreno-Ochoa is also independently unwarranted under the applicable § 3553(a) factors. Among §1326 convictions, his was a serious one. As I explained at sentencing, his history—which included three felony convictions and three deportations—merited a significant sentence:

> [B]ased on Mr. Moreno's history and the way -- the nature of the various prior felonies that he has, he has three prior felony convictions including drug trafficking and also including a prior 1326 in this very district for which he was sentenced to 13 months and a day followed by three years of supervised release.
>
> But the way that . . . § 2L of the guidelines is crafted and based on his particular history, **he has what I would describe as almost a blackout bingo card for section 2L. He checks almost every box[,] which results in a pretty significant guideline offense level** here of 25. **And then when we add in his criminal history category, which is a criminal history category of IV, that gives us a significant guideline range** of 84 to 105 months.
>
> . . . [But I] find based on cultural assimilation and the age of the convictions that form the basis for all of these additional computations in the guidelines and which justify a much higher sentence for him than many of the other people who are in here on a 1326 case, that some reduction is certainly necessary to the guideline level.

---

[16] The BOP's website is not reporting any COVID-19 cases at Reeves I & II. *See* https://www.bop.gov/coronavirus/ (last visited 5/15/2020).

[17] https://www.bop.gov/coronavirus/covid19_status.jsp (last visited 5/15/2020).

4

> But, of course, I also can't ignore that he has three prior deportations. This is his second felony conviction under 1326, and I am absolutely confident that when the last judge sentenced him to 13 months and a day for this very same offense, that he was cautioned that his next felony under 1326 was going to earn him a much larger sentence if he were to come back again. So he's going to get that same lecture from me, of course, but based on the totality of this situation and primarily based on cultural assimilation and the age of his convictions, which form his prior criminal history, I am going to vary down to a sentence of 50 months followed by three years of supervised release.[18]

Thus, Moreno-Ochoa's history and characteristics, the need to promote respect for the law and protect the public from his crimes, and all other § 3553(a) factors weigh heavily against shaving 17 months off his sentence. So even if I have the ability to consider his request for relief, I would deny it on its merits.

## Conclusion

IT IS THEREFORE ORDERED that Defendant Eric Yokani Moreno-Ochoa's Motion for Release **[ECF No. 73] is DENIED.**

Dated: May 15, 2020

_____
U.S. District Judge Jennifer A. Dorsey

---

[18] Transcript of sentencing hearing at pp. 20–22.